657 So.2d 549 (1995)
STATE of Louisiana
v.
Jay WILSON.
No. 95-K-0619.
Court of Appeal of Louisiana, Fourth Circuit.
June 7, 1995.
*550 Harry F. Connick, Dist. Atty., Lee Chawla, Asst. Dist. Atty., Nicole Gil, Law Clerk, New Orleans, for relator.
Before SCHOTT, C.J., and BYRNES and LOBRANO, JJ.
BYRNES, Judge.
The State requests a review of the trial court's ruling granting defendant's motion to suppress the evidence. Defendant was given the opportunity to respond and did not. We reverse and remand.
The state contends that the trial court erred in suppressing the crack cocaine because it was properly seized as property which was abandoned before the defendant was subject to an imminent detention.
At approximately 10:00 a.m. on January 18, 1995, three police officers were on routine patrol in the area of Piety and Alja Meyers Streets in the Desire Housing Project when they saw three men "just hanging in the courtyard." The officers decided to approach the men to "see what was going on," and they drove their patrol car up about two car lengths onto the grass toward the men. One of the men, the defendant Jay Wilson, left the group and began walking away. When the police car stopped approximately five feet away, Wilson dropped a pill bottle and ran away. The officers knew that pill bottles were used as a common method of carrying crack cocaine. While two officers chased and caught Wilson, the remaining officer retrieved the pill bottle, which was found to contain three rocks of crack. At first, Wilson gave his name as James Williams, and he indicated he was on probation from New York. While being booked, *551 however, he admitted his name was Jay Wilson.
If property is abandoned without a prior unlawful intrusion into a citizen's right to be free from governmental interference, then it can be lawfully seized; in such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). See also State v. Andrishok, 434 So.2d 389 (La.1983).
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993). An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id., 626 So.2d at 712. To determine whether an actual stop of an individual is imminent, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an actual stop of an individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id., 626 So.2d at 712-713.
In the present case, there was no "actual stop" of the defendant prior to his abandonment of the cocaine. Thus, this court must look to the factors set forth in Tucker to determine if there was an "imminent actual stop" at the time he abandoned the property, and if so, whether the officers had reasonable suspicion of criminal activity to support the imminent actual stop.
Officer Warren testified that while three uniformed officers were in a marked police car patrolling the area, they saw a group of men in the courtyard and drove about two car lengths up onto the grass to observe what was going on. The defendant started walking away from the group. The officer testified that:
The two other guys, they just stood there. And as we went to see what was up with the subject Williams, as we got about five feet away from the subject, he dropped a pill bottle which is a common method of carrying crack cocaine.
As he dropped the bottle, he took off running
. . . .
On cross-examination, Officer Warren answered the defense counsel as follows:
A. We were all in the car. As the car got five feet from the subjects.
Q. The car was within five feet of him when you observed him drop the pill bottle?

A. Yes.
[Emphasis added.]
The officer testified that the police car did not have its top lights or siren on. The police were not out of the car when the defendant dropped the bottle, they did not approach the defendant with their weapons drawn, and they did not try to apprehend the defendant until after he dropped the bottle and ran away. Under the totality of circumstances, we do not find that there was any force used by the police that was virtually certain to result in an imminent actual stop of the defendant when he abandoned the bottle.
Accordingly, the ruling of the trial court is reversed. Defendant's motion to suppress is denied, and the case is remanded to the trial court.
REVERSED AND REMANDED.