694 So.2d 509 (1997)
STATE of Louisiana
v.
James SMITH and Melvin C. Hunter.
No. 96-KA-0640.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1997.
*510 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Appellee.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for Appellants.
Before BARRY, BYRNES and LANDRIEU, JJ.
BYRNES, Judge.
James Smith and Melvin C. Hunter appeal their convictions and sentences for possession of crack cocaine, and convictions and sentences as multiple offenders. We affirm.
On August 5, 1995 at approximately 5:20 p.m., Sergeant Stephen Gaudet, Officer Brian Lampard, and Officer Jack Schnapp were on *511 patrol in the 1200 block of South Saratoga Street in New Orleans, an area known to the officers for drug activity. Sgt. Gaudet, who was seated on the passenger side of the police vehicle, noticed defendant James Smith standing in an alleyway deeply inhaling a cigarette and holding the cigarette in a distinctive way. The alleyway was on the driver's side of the police vehicle. When Smith saw the marked police unit, he discarded the cigarette and began walking down the alleyway. The officers exited their vehicle and Sergeant Gaudet asked Smith to stop. Smith complied and discarded a black leather organizer case as he turned around. The cigarette Smith was smoking was determined to be marijuana. The leather case contained two marijuana cigarettes, a Victoria match box with three pieces of crack cocaine and $67.64 of currency.
Officer Lampard retrieved the marijuana cigarette Smith had smoked and discarded upon seeing the police car. As Officer Lampard approached Smith and Sergeant Gaudet, he heard defendant Melvin Hunter fumbling through a toolbox which was on the ground in the back of the alleyway. Officer Lampard then started to walk toward Hunter, who was bent down. When Hunter raised himself up, Officer Lampard saw an aspirin bottle in his right hand. Officer Lampard testified that medicine bottles are commonly used to transport illegal drugs. Seeing Officer Lampard, Hunter hurriedly threw the aspirin bottle into the toolbox. The aspirin bottle was then retrieved and found to contain four pieces of crack cocaine. At the search incident to the arrest, the officers found $491 in the leather waist pack Hunter was wearing.
Defendant Smith testified that he was outside by the gate with a lady friend and others when he was arrested. He related that he did not throw his bag down. He did not recall if he was smoking when the police saw him, but testified that, if he were, it was not a marijuana cigarette. He denied knowing where the drugs came from. Smith admitted prior convictions.
Defendant Hunter testified that he is the supervisor and maintenance man for the building which borders on the alleyway. He related that he was looking for a tool when he was approached by an officer. He stated that the officer picked up the bottle containing cocaine from the ground and put it in his bag. Hunter further testified that the drugs came from someone named Darleen, who told the officer it belonged to her. Hunter testified that the money in the bag was from rents he collected for the landlord. Like Smith, Hunter admitted prior convictions.
On September 26, 1995 the defendants James Smith and Melvin C. Hunter were charged by bill of information with possession of crack cocaine. After a hearing on October 17, 1995, the trial court denied the defendants' motions to suppress evidence. On November 7, 1995 a jury found the appellants guilty as charged, and on November 14, 1995 the defendants were sentenced. James Smith was sentenced to serve forty months at hard labor. Following his plea of guilty to the multiple bill which alleged he was a second felony offender, Smith was resentenced to serve forty months at hard labor as a multiple offender. Melvin Hunter was sentenced to serve four years at hard labor. Following his plea of guilty to the multiple bill which alleged he was a third felony offender, Hunter was resentenced to serve four years at hard labor as a multiple offender. Their appeals followed.
A review of the record indicates that there were no errors patent. On appeal the defendants argue that the trial court erred in denying their motions to suppress.
A law enforcement officer may stop a person in a public place whom he reasonably believes is committing, has committed, or is about to commit an offense. La.C.Cr.P. Art. 215.1. If an officer stops a person pursuant to art. 215.1, the officer may conduct a limited patdown frisk for weapons if he reasonably believes that he is in danger or that the suspect is armed. La.C.Cr.P. art. 215.1(B). "Reasonable suspicion" is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Herman Matthews, 94-2112 (La. *512 App. 4 Cir. 4/26/95), 654 So.2d 868; State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94) 633 So.2d 819.
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993), opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993). In that case, acting on repeated complaints of drug-related activity, the police conducted a drug sweep in certain high-crime areas. The sweep began when approximately ten to twelve marked police vehicles carrying 20 to 30 officers converged. When two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out while simultaneously ordering the two men to "halt" and "prone out." One man lay down immediately. The other, Tucker, moved several steps and tossed away a plastic bag. He then lay down. The Louisiana Supreme Court noted:
.... while the Fourth Amendment only protects individuals from "actual stops" by law enforcement officers, [California v.] Hodari D, [499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)], our constitution also protects individuals from "imminent actual stops." Therefore, it becomes incumbent upon us to now determine what constitutes an "actual stop" and an "imminent actual stop" as those terms were used in [State v.] Belton[, 441 So.2d 1195 (La. 1983)].
... We agree with the United States Supreme Court, an "actual stop" of an individual has not occurred when a police officer yells "Halt!" at a fleeing form which continues to flee. Thus, we hold that an individual has not been actually "stopped" unless he submits to a police show of authority or he is physically contacted by the police.
Tucker, 626 So.2d at 712.
An "imminent actual stop" occurs "when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Id. To determine whether an actual stop of an individual is imminent, the following factors, "although non-exhaustive," may be employed in determining whether that force was virtually certain to result in an actual stop of an individual: "(1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter." Id., at 712-713.
The Louisiana Supreme Court stated that it "cannot conclude an actual stop of Tucker was `virtually certain' to occur at the time he abandoned the evidence. Thus, at the time Tucker abandoned the marijuana he had not been unconstitutionally seized." Id., 626 So.2d at 713. The Supreme Court upheld Tucker's conviction.
In State v. Wilson, 95-0619 (La.App. 4 Cir. 6/7/95), 657 So.2d 549, while three uniformed police officers were in a marked police car patrolling the area, they saw a group of men in the courtyard of the Desire Housing Project. The police drove about two car lengths up onto the grass to observe what was going on. The defendant started walking away from the group. When the officers in the police car got about five feet from the subject, he dropped a pill bottle and ran. This court noted:
The officer testified that the police car did not have its top lights or siren on. The police were not out of the car when the defendant dropped the bottle, they did not approach the defendant with their weapons drawn, and they did not try to apprehend the defendant until after he dropped the bottle and ran away. Under the totality of circumstances, we do not find that there was any force used by the police that was virtually certain to result in an imminent actual stop of the defendant when he abandoned the bottle.

Id., 657 So.2d at 551.
*513 In State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208, police officers observed several subjects kneeling and apparently shooting dice in front of a gasoline station. The men saw the marked police car and disbursed. The defendant walked "hastily" into the gas station with the officers in pursuit, only several feet behind. The defendant removed an object from his pants pocket and placed it in a display rack. The Louisiana Supreme Court found that the police "did not forcibly detain him [the defendant], or make a show of their authority signalling that some form of detention was imminent, until after he discarded the packet of cocaine." Id., 633 So.2d at 1209.
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La. C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990). If property is abandoned without a prior unlawful intrusion into a citizen's right to be free from governmental interference, then it can be lawfully seized; in such cases, there is no expectation of privacy and thus no violation of a person's custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983).
In the present case, at the motion to suppress hearing Officer Lampard articulated that the incident took place in a high crime area known for drug activity, and the defendant acted in a suspicious manner. The prosecutor asked:
Q. What led you to believe that it was a marijuana cigarette [Smith] was smoking?
Officer Lampard replied:
A. The method in which he was smoking it, and as soon as he saw the police car, he discarded it and tried to create distance between himself and the object which he had discarded. All those things led us to believe it was a marijuana cigarette that he was smoking.
Deference should be given to the experience of the policemen who were present at the time of the incident. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has the background based on personal experience to interpret those acts. The police did not exit the police car and order Smith to stop until after he had abandoned the cigarette. Considering the manner in which Smith was smoking the cigarette, that Officer Lampard stated that the area had a reputation for "numerous narcotics and weapons arrests," as well as the fact that Smith furtively abandoned the cigarette, the police had a reasonable suspicion to make an investigatory stop. Smith had no expectation of privacy in the abandoned cigarette. The officers properly seized the abandoned cigarette and further confirmed that the cigarette most probably was marijuana. Based on the conclusion that Smith had abandoned a marijuana cigarette, they had probable cause to arrest the defendant, and they properly seized the abandoned leather case containing a Victoria match box with three pieces of crack cocaine, and $67.64 in currency, which Smith discarded after the officers told him to stop.
Officer Gaudet's attention was aroused when he heard defendant Hunter looking for something in a toolbox in the back of the alley. The officer then noticed an unmarked medicine bottle in Hunter's hand. When the officer saw Hunter with the medicine bottle in the high crime area where numerous drugs and weapons arrests had been made, the officer had reasonable suspicion to believe Hunter may have been engaged in illegal activity. In Tucker, supra, the Louisiana Supreme Court determined that although there were several police officers *514 on the street, the defendant turned away and an officer yelled for him to stop or halt, an actual stop of Tucker was not virtually certain to occur at the time he abandoned the evidence. In the present case, when the defendant Hunter dropped the aspirin bottle, an "actual stop" of the defendant was not imminent. There was no expectation of privacy and thus no violation of the defendant's custodial rights so that the medicine bottle was lawfully seized. When the officers found what appeared to be four pieces of crack cocaine in the medicine bottle, they had probable cause to arrest Hunter, and the $491 found in the leather fanny pack was lawfully seized.
The trial court properly denied the defendants' motions to suppress the evidence. Accordingly, the defendants' convictions and sentences are affirmed.
AFFIRMED.
LANDRIEU, J., dissents.