703 So.2d 192 (1997)
STATE of Louisiana
v.
Jerome BENJAMIN.
No. 96-KA-2781.
Court of Appeal of Louisiana, Fourth Circuit.
November 26, 1997.
*193 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, for Appellee State of Louisiana.
Sherry Watters, Orleans Indigent Defender Program, Scott N. Hensgens, Student Attorney, Tulane Law School Community Service Program, New Orleans, for Appellant Jerome Benjamin.
Before BYRNES, JONES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Defendant, Jerome Benjamin was charged by bill of information with being a convicted felon in possession of a firearm, a violation of LSA-R.S. 14:95.1. Pretrial hearings to determine probable cause and to suppress evidence were held. The trial court found probable cause to bind the defendant over for trial, and denied the motion to suppress the evidence. A jury of twelve citizens found the defendant guilty as charged. The defendant was sentenced to serve twelve years at hard labor without the benefit of parole, probation or suspension of sentence with credit for time served, and was assessed a $1,500 fine.[1]

STATEMENT OF FACTS
We reviewed the testimony both at the hearing on the motion to suppress and at *194 trial.[2] Police Officer Joseph Pollard testified on both occasions that on 9 January 1996, at approximately 11 o'clock p.m., he and his partner, Police Officer Ernest Rome, were patrolling in the area of Alabo and No. Johnson Streets. Officer Pollard testified that when they drove alongside the defendant he noticed that the defendant "grabbed his waistband" and "started running on No. Johnson Street." Officer Pollard suspected, based on this behavior, that the defendant either had a gun or contraband. Initially the police unit manned by Officers Pollard and Rome followed from behind the defendant, but when the officers caught up with him, Officer Pollard chased the running defendant on foot. Meanwhile, another police car manned by Officers Marquez and Thomas, without knowledge as to why the officers were trying to apprehend the defendant, joined in the chase. Officers Marquez and Thomas gave assistance based on the assumption that the defendant had fled from Officers Rome and Pollard. Officer Thomas testified that he saw the defendant "grab at his waistband," which to him was an indication that the defendant "was trying to conceal something or hold something up so that it won't fall down." At some point during the chase the defendant ran in between cars, and ultimately Officer Thomas joined Officer Pollard in the footrace, following the defendant running on the sidewalk, and cutting in front of the car. According to Officer Thomas he ran about a quarter of a block on the opposite side of the street with the goal of cutting the defendant off. The defendant ran through a fence in front of an abandoned house and into a rear yard where he jumped over a fence. Officer Pollard testified that the defendant pulled on his waistband which aroused his suspicion and he "knew" that he had either a gun or contraband. Ultimately, the defendant discarded a weapon in an empty lot in the 2000 block of Charbonnet Street. Officer Pollard testified that he made a mental note where the weapon had been discarded and continued to pursue the defendant, but ultimately gave up chasing the defendant because he was fatigued. Meanwhile, Officer Thomas continued the chase. The defendant was finally apprehended by Officers Rome and Marquez when he exited an empty lot around the corner. Officer Pollard testified that since only he had seen the weapon and where it was discarded, he retrieved it. Officer Rome read the defendant his rights and after he had done so, the defendant allegedly stated that he had to get rid of the gun because he did not want to go back to jail. Once the defendant's name was checked in the computer, it was determined that the defendant had a prior conviction for armed robbery.
At trial Officer Burmaster testified that in his expert opinion the fingerprints taken of the defendant in court when compared with fingerprints taken from the reverse side of a Bill of Information charging the defendant with two counts of armed robbery, to which the defendant had pled guilty, were identical and established that the defendant was the same person who had previously plead guilty to the two counts of armed robbery, forming the predicate offense for the alleged LSA-R.S. 14:95.1 violation.
The defendant testified and readily admitted that he had previously pled guilty to two counts of armed robbery. According to the defendant, he was walking down No. Johnson Street, when Officers Rome and Pollard pulled up behind him with sirens and a flashlight. He testified that he kept walking but he was ordered to stand against the car. As he argued with the officers, he fled the scene because he did not like the way the officers were "handling" him. He testified that he ran through a yard, jumped a fence and collapsed on Lamanche Street. He testified that an officer then came up and asked him if he had any drugs. He answered that he did not have any drugs. He stated that the officer began to hit him. He told the officer that he had been shot. After being questioned by the officer where he had been shot, he showed the officer the wound. The officer responded that he did not run like he had been shot. He testified that the officer handcuffed him and placed him in the police *195 unit. The officer asked defendant his name in order to run a check. The officers asked the defendant if he knew why he was under arrest. He responded, "No". The officers showed him a gun and asked if it belonged to him. He responded, "No". Defendant denied having made the statement that he had discarded the weapon because he did not want to go to jail. He also denied having a gun after he was released from prison. He denied guilt as to the armed robbery charge and said that he pled guilty only to please his mother and because he was facing two ninety-nine year sentences. On cross-examination, defendant admitted that he began to run when police shined the light on him.

ASSIGNMENT OF ERROR
The defendant complains that he did no more than walk down the street and that the trial court erred in failing to grant the defendant's motion to suppress the evidence, because:
a) before the stop of the defendant occurred the officers lacked reasonable suspicion for an investigatory stop; and
b) the seizure of the allegedly discarded firearm exceeded the bounds of a permissible investigatory stop.

THE APPLICABLE LAW
The authorization for a temporary stop by a police officer of a person in a public place is set forth in LSA-C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Guy, 575 So.2d 429 (La.App. 4 Cir.), writ denied 578 So.2d 930 (La.1991); State v. Smith, 573 So.2d 1233 (La.App. 4 Cir.), writ denied 577 So.2d 48 (La.1991); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Jones, 483 So.2d 1207 (La.App. 4 Cir.), writ denied 488 So.2d 197 (La.1986). As this Court noted in Johnson:
Reasonable suspicion is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).

Johnson, 557 So.2d at 1033. See also Guy; Smith.

An investigatory stop is a "seizure" that must be justified by some objective manifestation that the person is or is about to be involved in criminal activity. The detaining officers must have knowledge of specific, articulable facts which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Vance, 93-1389 (La.App. 4 Cir. 2/25/94), 633 So.2d 819. A seizure violative of the Louisiana Constitution, Art.1, Sect. 5 occurs when the police, without reasonable suspicion, either stop an individual or create a situation wherein an actual stop of the individual is imminent.
The fact that a person runs or flees does not in and of itself establish probable cause. Flight does not always indicate guilt. It may result from fear and possibly other causes. Even when flight does appear reasonably designed to avoid apprehension, reasonable cause will not arise unless flight, combined with other information upon which the officer is entitled to rely, would indicate to a reasonable mind that the combination of circumstances is inconsistent with any innocent pursuit. State v. Hathaway, 411 So.2d 1074 (La.1982); State v. Patterson, 588 So.2d 392 (La.App. 4 Cir.1991).
Evidence abandoned by a citizen and recovered by the police as a direct result of an unconstitutional seizure may not be used in a resulting prosecution against the citizen. State v. Tucker, 626 So.2d 707 (La.1993); State v. Chopin, 372 So.2d 1222 (La.1979). When the citizen is stopped without reasonable cause or when a stop without reasonable cause is imminent the right to be left alone is violated and renders unlawful any resultant seizure of abandoned property. Tucker.
*196 A warrantless arrest must be based on probable cause. Probable cause exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Tomasetti, 381 So.2d 420 (1980), citing Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The officer must have had sufficient facts within his knowledge to justify an infringement of the suspect's rights. Mere suspicion of criminal activity is not sufficient for police interference with an individual's freedom. State v. Williams, 421 So.2d 874 (La.1982).

ANALYSIS
In the instant case, Officers Pollard and Rome pursued the defendant merely because he grabbed at his waistband and ran down the street. Neither officer testified that they ordered the defendant to stop or had any conversation with the defendant. Neither testified that the defendant was known to him or that the defendant was known to engage in criminal activity. Neither officer saw defendant with drugs or a weapon. The officers did not even testify that the area was notorious for criminal activity; more significantly, neither officer saw the defendant with drugs or a weapon. Adjusting one's trousers by tugging on the waistband without any other indicia of suspicious behavior is innocent activity. There was no testimony that there was a tip on a hotline or that a call was made to describe the defendant as being armed. When the defendant adjusted his waistband and ran, the officers operated on a mere belief that the defendant was fleeing because he was secreting either a weapon or drugs in his waistband. Concerning the defendant's behavior the officers testified that "he grabbed his waistband and started running," and "he observed the police car and just started fleeing holding on to his waistband." Officer Rome testified that he saw no gun when he first saw the defendant but saw him ... "just holding his waistband." Officer Marquez admitted that he "did not see or know what reason they had for stopping him [the defendant]. " Officer Pollard testified that when "the defendant saw us he ran on No. Johnson, pulling his waistband." The officers did not articulate any knowledge or facts to justify the belief that the defendant had committed, was committing or was about to commit a crime.
It was during the chase of the defendant that Officer Pollard testified that he observed defendant discard a weapon which he later retrieved. The defendant's stop was imminent. Two officers were chasing the defendant on foot and two were following in police units cutting off any escape routes that the defendant might take. He was surrounded by the police. In fact, the testimony was to the effect that the officers' aim was to try to cut him off, give him a short cut and make him turn so that he would have no escape possibility.
Furthermore, when the defendant encountered Officer Rome, the officer did not apprehend and question the defendant as to why he ran and why he grabbed at his waistband. The defendant was never given the opportunity to explain his actions, which is the purpose of an investigatory stop. Instead, Officer Rome handcuffed the defendant and arrested him. There was no reasonable suspicion to detain the defendant. All the while there were no articulable facts that the defendant was fleeing as a result of the commission or attempted commission of a crime. Although the defendant's running from the scene upon seeing the officers is a factor to be considered, flight without more is insufficient to justify an investigatory stop where the officers did not know what might be in the defendant's waistband. State v. Roberson, 549 So.2d 931 (La.App. 3 Cir. 1989); State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174; State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied 97-1006 (La.6/20/97), 695 So.2d 1352. Running and pulling on the waistband served as an impermissible substitute for the requisite reasonable suspicion. It is not a crime to run from the police while clutching one's waistband.
Where officers, as here, do not have the right to make an investigatory stop, *197 property abandoned or otherwise disposed of as a result thereof cannot be legally seized by police officers. State v. Andrishok, 434 So.2d 389 (La.1983). In Louisiana, when a citizen is actually stopped without reasonable cause, or when a stop without reasonable cause is imminent, "the right to be left alone" is violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).

CONCLUSION AND DECREE
Since the defendant's actions did not rise to the level of reasonable suspicion to justify the pursuit and the stop of the defendant, and because the weapon was discarded when the illegal stop was imminent, the seizure of the weapon was also illegal, and because no probable cause existed for Officer Rome to arrest the defendant following the chase, the defendant's arrest was illegal. The trial court committed error when he denied the motion to suppress the evidence. Because the illegally obtained evidence was admitted at trial, the conviction and the sentence are reversed and the case is remanded for further proceedings.
CONVICTION AND SENTENCE REVERSED. CASE REMANDED TO TRIAL COURT FOR FURTHER PROCEEDINGS.
BYRNES, J., dissents with reason.
BYRNES, Judge, dissenting with reasons.
I respectfully dissent based on my conclusion that an investigatory stop was reasonable, and the defendant abandoned the weapon without any prior unlawful intrusion into his right to be free from governmental interference so that the weapon was lawfully seized. The gun and the defendant's subsequent statement (that he had to get rid of the gun because he didn't want to go back to jail) were properly submitted at trial.
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir.1994), 641 So.2d 1081. Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), certiorari denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990).
The crucial issue in the present case is whether the officers "stopped" the defendant before the defendant discarded the weapon because if property is abandoned without any prior unlawful intrusion into a citizen's right to be free from governmental interference, then such property may be lawfully seized. State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208. In such cases, there is no expectation of privacy and, thus, no violation of a person's custodial rights. State v. Andrishok, 434 So.2d 389 (La.1983).
An "actual stop" occurs when an individual submits to a police show of authority or is physically contacted by the police. State v. Tucker, 626 So.2d 707 (La.1993), opinion reinstated on rehearing by 626 So.2d 720 (La. 1993). An "imminent actual stop" occurs when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. Id., 626 So.2d at 712. To determine whether an actual stop of an individual is imminent, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an actual stop of an individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter. Id., 626 So.2d at 712-713.
*198 In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La.1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993), State v. Short, 96-1092 (La.App. 4 Cir. 5/7/97), 694 So.2d 549.
In the present case, there was no "actual stop" of the defendant prior to his abandonment of the weapon. Thus, this court must look to the factors set forth in Tucker, supra, 626 So.2d 707, to determine if there was an "imminent actual stop" at the time he abandoned the property, and if so, whether the officers had reasonable suspicion of criminal activity to support the imminent actual stop.
In Tucker, id., acting on repeated complaints of drug-related activity, the police conducted a drug sweep in certain high-crime areas. The sweep began when approximately ten to twelve marked police vehicles carrying 20 to 30 officers converged. When two men noticed the approaching police cars, they quickly broke apart and began to leave. Officer Wilson stopped his car and began to get out while simultaneously ordering the two men to "halt" and "prone out." One man lay down immediately. The other, Tucker, moved several steps and tossed away a plastic bag. He then lay down. The Louisiana Supreme Court noted:
....while the Fourth Amendment only protects individuals from "actual stops" by law enforcement officers, [California v.] Hodari D, [499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)], our constitution also protects individuals from "imminent actual stops." Therefore, it becomes incumbent upon us to now determine what constitutes an "actual stop" and an "imminent actual stop" as those terms were used in Belton.

... We agree with the United States Supreme Court, an "actual stop" of an individual has not occurred when a police officer yells "Halt!" at a fleeing form which continues to flee. Thus, we hold that an individual has not been "actually stopped" unless he submits to a police show of authority or he is physically contacted by the police.

Tucker, 626 So.2d at 712.
The Louisiana Supreme Court stated that it "cannot conclude an actual stop of Tucker was `virtually certain' to occur at the time he abandoned the evidence. Thus, at the time Tucker abandoned the marijuana he had not been unconstitutionally seized." Id., 626 So.2d at 713. The Supreme Court upheld Tucker's conviction.
In State v. Wilson, 95-0619 (La.App. 4 Cir. 6/7/95), 657 So.2d 549, while three uniformed police officers were in a marked police car patrolling the area, they saw a group of men in the courtyard of the Desire Housing Project. The police drove about two car lengths up onto the grass to observe what was going on. The defendant started walking away from the group. When the officers in the police car got about five feet from the subject, he dropped a pill bottle and ran. This court noted:
The officer testified that the police car did not have its top lights or siren on. The police were not out of the car when the defendant dropped the bottle, they did not approach the defendant with their weapons drawn, and they did not try to apprehend the defendant until after he dropped the bottle and ran away. Under the totality of circumstances, we do not find that there was any force used by the police that was virtually certain to result in an imminent actual stop of the defendant when he abandoned the bottle.

Id., 657 So.2d at 551.
In State v. Clark, 612 So.2d 232 (La.App. 4 Cir.1992), the officer had reasonable suspicion of criminal activity so as to justify the stop of the defendant, where the officer saw the defendant carrying a cigarette shaped *199 tinfoil object which from his experience the officer thought might contain a marijuana cigarette soaked with phencyclidine (PCP). The police did not articulate that the incident took place in a high crime area or in an area with a reputation for drug activity. When the defendant got into a car, the police stopped and exited their car. When the officers asked the defendant to get out of the car, the defendant dropped his hand out of the car, tossed something shiny under the car, and then got out of the car. The officers retrieved a tinfoil-wrapped cigarette which was found to contain marijuana soaked in PCP, which was abandoned and properly seized prior to the defendant's arrest.
In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.

State v. Ganier, 591 So.2d at 1330. [Emphasis added.]
In State v. Britton, 93-1990 (La.1/27/94), 633 So.2d 1208, police officers observed several subjects kneeling and apparently shooting dice in front of a gasoline station. The men saw the marked police car and disbursed. The defendant walked "hastily" into the gas station with the officers in pursuit, only several feet behind. The defendant removed an object from his pants pocket and placed it in a display rack. The Louisiana Supreme Court found that the police "did not forcibly detain him [the defendant], or make a show of their authority signalling that some form of detention was imminent, until after he discarded the packet of cocaine." Id., 633 So.2d at 1209.
In State v. Ricard, 94-0975 (La.App. 4 Cir. 1994), 640 So.2d 880, in a high crime area the defendant appeared to be intoxicated and ignored the officers' order to stop. The defendant clenched his hand and attempted to put it into his coat pocket. Believing that the defendant was reaching for a gun, the officer grabbed the defendant's hand and opened it, finding a cocaine pipe. This court found that the officers articulated specific reasons for suspecting that the defendant had a weapon, and the evidence was legally seized.
In State v. Laird, 95-1082 (La.App. 4 Cir. 5/8/96) 674 So.2d 425, the defendant was standing next to a female whom the officers were investigating a weapons violation. When the defendant saw the officers, he ran up the stairs into to the female's apartment. An officer chased the defendant up the stairs and followed the defendant into the apartment where he saw the defendant discard a white object near a refrigerator. After the officer detained the defendant, another officer recovered the piece of plastic containing several rock-like objects which appeared to be cocaine and placed the defendant under arrest, advising him of his Miranda rights. The defendant first said he had no knowledge of the cocaine but then he admitted possessing it and discarding it. Although the officers did not enunciate that the incident took place in a high crime area, this court found that the officers had reasonable suspicion to make an investigatory stop of the fleeing defendant because he was standing next to the female "who was reported to have a gun or was looking for a gun. The police could reasonably believe that the defendant may have had the gun, or that [the female] might be getting the gun from the defendant." Based on the fact that he was standing with the female being investigated for a weapon violation, and the defendant began to run, the officers had reasonable suspicion *200 that the defendant might have a weapon. In the present case, based on the fact that not only did the defendant begin to run, he also reached for his waistband as if he were concealing what could have been a weapon or another illegal item. The officers had reasonable suspicion at that point to make an investigatory stop. When the defendant ran and dropped the weapon, they did not intrude on his right to privacy because they had reasonable suspicion to make an imminent investigatory stop and were in the process of doing so. When the officers recovered the weapon, then they also had probable cause to arrest the defendant.
In the present case, there was no "actual stop" of the defendant prior to his abandonment of the weapon. Just as in Tucker, supra, 626 So.2d 707, where there were several police officers on the street, the defendant ran and tried to conceal something. None of the officers yelled for him to stop or halt. The defendant abruptly ran away from the officers before they exited their cars and followed the defendant on foot. They did not order the defendant to stop, and they did not draw guns before the defendant ran. Under the totality of circumstances I do not find that the police forcibly detained the defendant before he abandoned the weapon; moreover, the officers had reasonable suspicion for an investigatory stop of the defendant based on the fact that not only did the defendant run, but he also reached for his waistband as if to conceal something. When the defendant Jerome Benjamin ran away, motioned as if he were trying to conceal something, and then threw down the weapon, an "actual stop" of the defendant was not imminent at the time he abandoned the evidence under the totality of the circumstances in the present case. There was no expectation of privacy and thus no violation of the defendant's custodial rights so that the weapon was lawfully seized. When the defendant discarded the weapon, the reasonable suspicion to make an investigatory stop gave rise to the level of probable cause to arrest the defendant for carrying a concealed weapon.
The majority states: "Adjusting one's trousers by tugging on the waistband without any other indicia of suspicious behavior is innocent activity." However, in the present situation when the defendant grabbed at his waistband, he also ran when he saw the police. The present case is not a situation of a man merely jogging down the street. The officer's common sense would alert them that the defendant was committing or had committed a crime.
In the present case, the officer articulated that the defendant acted in a suspicious manner by running away, as well as reaching for his waistband, giving the officer reason to believe that the subject may be reaching for a weapon and/or he may be trying to conceal something illegal. Deference should be given to the experience of the policemen who were present at the time of the incident; a certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. State v. Short, 96-1069 (La.App. 4 Cir. 5/7/97) 694 So.2d 549. In particular, if he feels that a subject may be reaching for a weapon, the officer should react for his safety and the safety of a fellow officer under the conditions and events as they occur. Under the totality of circumstances the officer had a reasonable belief that the defendant was trying to conceal something illegal or was carrying a concealed weapon, so that an investigatory stop was authorized under La.C.Cr.P. art. 215.1.
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988).
There was prior justification for the officer's intrusion into the protected area to make an investigatory stop. Under the totality of circumstances, the intrusiveness of the seizure of the abandoned weapon did not invade an expectation of privacy which society is prepared to recognize as reasonable.
The trial court properly denied the defendant's motion to suppress the evidence of the gun and the defendant's statement. Accordingly, *201 the defendant's conviction and sentence should be affirmed.
NOTES
[1] The sentencing transcript reflects that the trial judge imposed the mandatory fine; the minute entry of the sentencing and the copy of the commitment papers do not reflect the imposition of the mandatory fine.
[2] In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at the suppression hearing, but may consider all pertinent evidence adduced at trial. State v. Barra, 572 So.2d 1187 (La.App. 4 Cir. 1990) writ denied, 575 So.2d 822 (La.1991).