hWALTZER, Judge.
Defendant, Cleveland Neal was charged by bill of information with the violation of LSA-R.S.40:966 (C) relative to possession of cocaine. Pretrial hearings to determine probable cause and to suppress the evidence were held. The trial court found probable cause to bind the defendant over for trial, and denied the motion to suppress the evidence. Neal challenges this ruling under our supervisory jurisdiction.

STATEMENT OF THE FACTS

On 24 November 1997 at approximately 7:47 p.m., Police Officer Lampard and Police Recruit Knight were on routine patrol in the area of Magnolia and Valence Streets. There had been no specific complaint about any criminal activity in the area but it was “a hot line location” the officers were assigned to address. When the officers reached the corner of Magnolia and Valence, they noticed two men standing on the corner. Upon seeing the police car, both men fled in opposite directions. The defendant, whom they did not know, ran West on Magnolia Street, and *660 as he did so grabbed his waistband with his right hand. Officer Lampard testified that they believed the defendant was possibly armed, although no bulge was observed and no threatening motion was made by the defendant. The officers elected to pursue this defendant in order to determine whether he was armed or not. Police Recruit Knight exited the patrol car to follow the defendant; Officer Lampard drove ahead in order to cut off any escape route the defendant might use. Officer Lampard related that ^Recruit Knight told him that while the defendant was running the defendant pulled off a sweatshirt he was wearing and discarded it on the way, and that the defendant had discarded a brown bag containing cocaine. Officer Lam-pard did not see any of this, and before he knew about Knight’s information, believed there to be “suspicious activity warranting a stop”. Officer Lampard apprehended the defendant and placed him under arrest. Neither the sweatshirt nor a gun was ever found.
Recruit Knight corroborated that he had seen the defendant running and that believing that he had a weapon, he decided to investigate and stop him. He testified that he ran after the defendant and saw him discard the sweatshirt somewhere in the block, and that he was in pursuit when the defendant discarded an object or a bag. Recruit Knight retrieved the bag and found that it contained cocaine.

DISCUSSION

The trial court found that the stop of the defendant was not imminent and denied the motion to suppress. The defendant argues that there was an imminent actual stop, and thus the officers needed reasonable suspicion to stop him. He contends his actions did not give the officers reasonable suspicion, and, therefore, the seizure of the cocaine was invalid. In State v. Tucker, 626 So.2d 707 (La.1993) opinion reaffirmed and reinstated on rehearing by 626 So.2d 720 (La.1993),our Supreme Court held inter alia that an “imminent actual stop” occurs when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the individual is virtually certain. If a defendant abandons property as a result of an actual stop or an imminent actual stop, the officers involved must have at least reasonable suspicion to support the stop.
|3In his application, the defendant relies on State v. Benjamin, 96-2781 (La.App. 4 Cir. 11/26/97), 703 So.2d 192, writ granted State v.Benjamin, 97-3065 (La. 4 /24/98), 717 So.2d 1152, the facts of which are almost identical to those in this case.
In Benjamin, officers were on routine patrol when they came upon the defendant, who was walking down the street. The officers pulled alongside the defendant; he grabbed at his waistband and began running down the street. Believing the defendant was carrying a weapon or contraband, one officer remained in the car and attempted to cut off the defendant’s escape. In addition, a second police car joined in the chase, with one of its officers joining in the foot race. The officers on foot chased the defendant through back yards and over fences, and at some point in the chase the defendant abandoned a gun and kept running. The officers in the car eventually captured the defendant as he was exiting an empty lot. One of the officers who chased the defendant on foot went back and retrieved the gun abandoned by the defendant.
The trial court denied the defendant’s motion to suppress the gun and the statement he made at his arrest. On review, this Court reversed. We noted that the actions of the officers showed that an actual stop of the individual was virtually certain. “Two officers were chasing the defendant on foot and two were following in police units cutting off any escape routes that the defendant might take. He was surrounded by the police. In fact, the testimony was to the effect that the officers’ aim was to try to cut him off, give him a short cut and make him turn so that he would have no escape possibility.” Id. at p. 7, 703 So.2d at 196. Because this Court found that an actual stop of the defendant was virtually certain, it also considered whether the circumstances gave the ^officers reasonable suspicion to stop the defendant, and it found reasonable suspicion lacking. This Court noted that the officers who chased the defendant did so only because he *661 began running and grabbed at his waistband. The Court pointed out that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant’s part. This Court concluded:
There was no reasonable suspicion to detain the defendant. All the while there were no articulable facts that the defendant was fleeing as a result of the commission or attempted commission of a crime. Although the defendant’s running from the scene upon seeing the officers is a factor to be considered, flight without more is insufficient to justify an investigatory stop where the officers did not know what might be in the defendant’s waistband. State v. Roberson, 549 So.2d 931 (La.App. 3 Cir.1989); State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174; State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied 97-1006 (La.6/20/97), 695 So.2d 1352. Running and pulling on the waistband served as an impermissible substitute for the requisite reasonable suspicion. It is not a crime to run from the police while clutching one’s waistband.
Benjamin at p. 8, 703 So.2d at 196.
Having found there was an imminent stop and that the officers did not have reasonable suspicion to support the stop, this Court suppressed the evidence abandoned by the defendant.
The facts in the instant case are strikingly similar to those in Benjamin. There is a difference in that here there were only two police officers involved, one on foot and one in a police car in hot pursuit, whereas in Benjamin there were more. We do not believe it necessary that there be a magic number of officers or police cars in order to determine whether an actual stop of the individual is virtually certain. What we do consider determinative are the facts of the particular incident and the virtual certainty of the stop conducted by the Rpolice. Both officers testified that they intended to cut off the defendant’s escape route.[1]
The trial court concluded that the defendant’s stop was not imminent. We disagree. It matters little that here there were only two police officers; what matters is that these police officers had the professed plan to stop and investigate the defendant before he alighted from a inescapable route. More importantly, we must determine whether the officers had reasonable suspicion of criminal activity in order to stop the defendant. As in Benjamin, the defendant here clutched his waistband and fled upon seeing the officers. The officers testified that they had no particular complaint about criminal activity in the area; they did not know the defendant from a previous encounter; they saw no bulge on the defendant; they did not see any activity whatsoever that could have been interpreted as a drug deal. Had there been any indicia of suspicion combined with the fact that the officers were on pro-active routine patrol in an area that had been a frequent “hot line location”, the State’s argument that the trial court look “at the totality of the circumstances” in deciding whether a seizure is reasonable, would have merit. The character of the area in which an | (¡incident occurs is a factor to be considered when determining if officers had reasonable suspicion to stop a defendant. That factor alone in this ease does *662 not supply the requisite reasonable suspicion for a stop.[2]
We find that when the police came upon thedefendant in such a manner, that regardless of his attempt to flee or elude the encounter, an actual stop of the defendant was virtually certain. Because the officers did not have reasonable suspicion to support an imminent actual stop, the seizure of the cocaine was unlawful.
ACCORDINGLY, the application for supervisory writs is GRANTED. The ruling of the trial court is REVERSED. The motion to suppress the evidence is GRANTED.
APPLICATION FOR SUPERVISORY WRITS GRANTED. RULING OF THE TRIAL COURT REVERSED. MOTION TO SUPPRESS GRANTED.
BYRNES, J., dissents with reasons.

. Officer Lampard testified: "Officer Knight exited the vehicle and pursued him on foot. I stayed in the police vehicle. I’ve been in several foot pursuits around the area and knew the route of escape very well... .The defendant turned into a rear yard approximately halfway down the block. He proceeded to go down the rear yard and make a U-lum coming back out onto Valence Street. I proceeded down Magnolia, took a left on Bordeaux and went up to South Robertson....” He testified on cross examination: "... He proceeded through the back yard of a residence. It's also — functions as a barber shop, maybe thirty feet, forty feet, then made a U-tum coming back out onto Valence.” When questioned by the defense attorney concerning the chase whether he had occasion to cut off the defendant’s escape route, Officer Lampard testified inter alia: "That was my initial intention. What happens at that comer usually is they'll go behind some barber shop and come out on Bordeaux Street. When I got to Bordeaux Street and he wasn’t there I proceeded up to South Robertson and turned, at which point I picked him up again.” Lampard also testified that the defendant wore reflective shoes which gave him away. Police Recruit Knight confirmed in his testimony that they both intended and did cut off the defendant's escape route and to pursue him "to determine whether he was armed or not.”

. The case cited by the State at the hearing in its opposition filed in the trial court, State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, is not applicable to this case. In Huntley, the officers had received a tip concerning drug sales at a certain location, and the defendant was observed at that location wearing clothing that matched the description given in the tip. Here, the officers had received no information concerning any illegal activity in the area at the time they saw the relator.