680 So.2d 174 (1996)
STATE of Louisiana
v.
Danny ELLINGTON.
No. 96-K-0766.
Court of Appeal of Louisiana, Fourth Circuit.
September 4, 1996.
Harry F. Connick, District Attorney, Emile A. Bagneris, III, Assistant District Attorney, New Orleans, for Relator.
*175 Frank Joseph Larré, Samuel Beardsley, Jr., Larré & Associates, Metairie, for Respondent.
Before BYRNES, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
The prosecution complains of the trial court's ruling granting a motion to suppress. We grant the writ and affirm the judgment of the trial judge.

STATEMENT OF THE FACTS
On 21 July 1995, at approximately 11:10 p.m. Police Officer Pincus was traveling in a marked police car near the intersection of St. Louis and Burgundy Streets, when he saw the defendant "briskly place something in his right pant's pocket". At the motion to suppress the evidence, (cocaine was ultimately seized), Officer Pincus explained that he thought this activity was suspicious and that it might be an attempt by the defendant to conceal something in his pocket. The officer further testified that this behavior might "indicate certain crimes such as drug activity, drug concealment ..."; additionally the officer testified that this incident occurred in an area known for drug trafficking and prostitution. Based on these suspicions on "the movements, the characteristic of the way he did it ...", the officer stopped the defendant and conducted a patdown search which revealed a four inch long folding knife in his right rear pants pocket. After the search was conducted, and after the knife was seized, the officer shined a flashlight into the same pocket and found a glass vile containing cocaine residue.
At the conclusion of the hearing, the trial court found that the officer did not have reasonable suspicion of criminal activity to justify the stop, patdown search, and seizure of the contraband.

DISCUSSION
A temporary stop by a police officer of a person in a public place is authorized by LSA-C.Cr.P. art. 215.1; see also Terry v. Ohio, 392 U.S. 1, 88 S.Ct.1868, 20 L.Ed.2d 889 (1968), State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990). "`Reasonable suspicion' is something less than probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights", State v. Clark, 612 So.2d 232, 233-234 (La.App. 4 Cir.1992).
In State v. Williams, 572 So.2d 756 (La. App. 4 Cir.1990), police officers saw a man walking in a "high drug trafficking area" with a clasped hand. When he became nervous upon seeing the officers, he entered a van which the officer subsequently stopped. Our court found that the officers did not have reasonable suspicion of criminal activity to justify the stop.
In State v. Edwards, 530 So.2d 97 (La.App. 4 Cir.1988), officers on patrol in an area known for narcotics observed the defendant standing on a corner showing a companion an object clenched in his hand. The defendant fled as the officers approached. The officers chased the defendant into a sweetshop where they saw him remove a gun from his waistband and place it under the door. On review of the trial court's granting of the motion to suppress the evidence, this Court found the officers' actions would have caused a reasonable person to believe he was seized and because the officers did not possess reasonable suspicion of criminal activity, the seizure of the discarded object was illegal.
Likewise, in State v. Williams, 621 So.2d 199 (La.App. 4 Cir.1993), the defendant was seen standing in a courtyard of a housing project. When he saw the police officers, "he turned immediately and quickly walked away." The officers also saw him "fooling with his belt area." The trial court denied the defendant's motion to suppress the pipe the officers seized after the defendant was stopped and frisked, but this court reversed the trial court's ruling. This court found that these facts did not justify the initial stop of the defendant, and even if the stop was legal, the officers provided no evidence to justify the subsequent pat-down search.
In the present case, Officer Pincus testified that he saw the defendant standing *176 in an area known for high drug activity and, upon seeing the marked police car, put his hands in his pocket as if attempting to conceal something. These facts are not sufficient to justify the stop of the defendant. The officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object which the defendant attempted to conceal. "A hunch or suspicion of illegal activity or transaction is insufficient to establish reasonable grounds to stop a person." Williams, supra, at 201. Additionally, even if the initial stop had been justified, Officer Pincus was not justified in conducting a pat-down frisk of the defendant. Officer Pincus was authorized to frisk only the outer clothing of a person for a dangerous weapon. LSA-C.Cr.P. 215.1.

CONCLUSION
In the present case, Officer Pincus did not testify to any "particular facts" from which he could reasonably infer that the defendant was armed and dangerous. The officer testified that the defendant's action may have indicated an attempt to conceal drugs, but never testified that he believed that the defendant might have been "armed and dangerous". Accordingly, the pat-down frisk was not justified in this case.
ACCORDINGLY, we grant the writ and affirm the ruling of the trial court.
WRIT GRANTED. JUDGMENT OF THE TRIAL COURT AFFIRMED.
BYRNES, Judge, dissents with reasons.
I respectfully dissent based on my conclusion that the investigatory stop was reasonable, the pat-down frisk of the defendant was justified, and the evidence was properly seized under the totality of circumstances.
In assessing the reasonableness of an investigatory stop, the court must balance the need to search and seize against the invasion of privacy the search and seizure entails. State v. Tucker, 604 So.2d 600 (La.App. 2 Cir.1992), affirmed in part, reversed in part on other grounds, 626 So.2d 720 (La.1993); State v. Washington, 621 So.2d 114 (La.App. 2 Cir.1993), writ denied, 626 So.2d 1177 (La. 1993). The intrusiveness of a search is not measured so much by scope as it is by whether it invades an expectation of privacy that society is prepared to recognize as reasonable. Twenty-Three Thousand Eight Hundred Eleven and No/100 ($23,811) Dollars in U.S. Currency v. Kowalski, 810 F.Supp. 738 (W.D.La.1993).
In reviewing the totality of circumstances, the officer's past experience, training and common sense may be considered in determining his inferences from the facts at hand were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir.1994), 641 So.2d 1081. The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.1991), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sigh of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4 Cir.1992), State v. Preston, 569 So.2d 50 (La.App. 4 Cir.1990). In State v. Thornton, 611 So.2d 732 (La.App. 4 Cir.1992), conduct constituting the charge of illegally carrying a gun in violation of La. R.S. 14:95, was based on the defendant's having concealed it in his pocket. It is clear that an officer may make a protective search of the suspect for his own safety and the safety of others. State v. Davis, 92-1623 (La.1994), 637 So.2d 1012, cert. denied, Davis v. Louisiana, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994).
In State v. Ricard, 94-0975 (La.App. 4 Cir.1994), 640 So.2d 880, in a high crime area the defendant appeared to be intoxicated and ignored the officers' order to stop. The defendant clenched his hand and attempted to put it into his coat pocket. Believing that the defendant was reaching for a gun, the officer grabbed the defendant's hand and opened it, finding a cocaine pipe. This court found that the officers articulated specific reasons for suspecting that the defendant had a weapon, and the evidence was legally seized.
*177 In State v. Ganier, 591 So.2d 1328 (La. App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended. This court found that two factors were sufficient to justify a top of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.
State v. Ganier, 591 So.2d at 1330.
In State v. Hall, 581 So.2d 337 (La.App. 3 Cir.1991), in a high crime area at approximately 4:00 a.m. an officer observed three subjects standing on a corner. As he was alone, the officer began to pat down the subjects before conducting interviews "pretty much agreed to" by the three subjects. As the officer started to pat down one person, he noticed that a female subject kept placing her hand in her left pocket and was "sort of evading him" by stepping away. The officer patted down the female, checking for a gun. When he felt a sharp object in her pocket, he retrieved four hypodermic needles, and arrested the female. The appellate court found that the stop and frisk were justified based on the reasonable suspicion that the defendant was reaching for a weapon. Under La.C.Cr.P. art. 215.1, the officer was authorized to stop and frisk the defendant based on the high crime area, the defendant's evasive conduct, and her reaching into her pocket possibly to retrieve an unknown object. The evidence was properly seized.
In the present case, the officer related:
... at approximately 11:10 p.m., I was proceeding in my marked vehicle down St. Louis, approaching Burgundy Street. At that point in time, I observed Mr. Ellington on the downtown lake side of Burgundy. From my view, my vantage point, I observed himhe appeared to be grasping something in his right hand. When he gazed in my direction, apparently, with the right hand, briskly placed something in his right rear pant's pocket.
Because I thought this was suspicious behavior, I relocated the vehicle about 20 to 30 feet, which that was the distance I was away from him, to the corner where he was. I exited my vehicle. I conducted a pat down for my safety.
On cross-examination the officer answered the defense counsel's questions as follows:
Q. "So, why did you stop him?"
A. This area, from my experience that I've assigned to the Eighth District for about seven years now, made numerous arrests in that area on those corners, specifically the eight and nine and 1,000 block of St. Louis for prostitution and narcotics trafficing (sic).
Q. So, Officer, what you did was you decided to stop him and check him out, because he was a black man standing on the street corner or on a block where you thought was a high traffic area?
A. That's not correct, sir. I stopped the gentleman, because at the time, he was stationary and upon acknowledging me, from what I thought when he acknowledged, he made a very brisk and suspicious movement with one of his hands, which I thought he was concealing something to his pocket. This alerted my attention, and I initiated an investigation at that point.
In the present case, the officer articulated that the incident took place in a high crime area, and the defendant acted in a suspicious manner, moved quickly and reached for his pants pocket, giving the officer reason to believe that the subject may be reaching for a weapon and/or he may be trying to conceal something illegal. Deference should be given *178 to the experience of the policemen who were present at the time of the incident. A certain look or gesture may not mean anything to the ordinary person; however, a policeman has sound judgment based on long experience to interpret these acts. In particular, if he feels that a subject may be reaching for a weapon, the officer should react for his safety and the safety of a fellow officer under the conditions and events as they occur. Under the totality of circumstances the officer had a reasonable belief that the defendant was trying to conceal something or was carrying a concealed weapon so that the stop and frisk were authorized under La.C.Cr.P. art. 215.1.
The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective expectation of privacy, but, rather whether that expectation is of a type which society at large is prepared to recognize as being reasonable. State v. McKinney, 93-1425 (La.App. 4 Cir. 5/17/94), 637 So.2d 1120; State v. Lambright, 525 So.2d 84 (La.App. 3 Cir.1988), writ denied 530 So.2d 83 (La.1988). Prerequisites for a legitimate plain view seizure are prior justification for police intrusion into the protected area and that it was immediately apparent, without close inspection, that the items were contraband; "immediately apparent" in this context means only that the officer must have probable cause to believe an item is contraband. State v. Jones, 93-1685 (La.App. 4 Cir. 7/27/94), 641 So.2d 688.
In State v. Haygood, 26,102 (La.App. 2 Cir. 8/17/94), 641 So.2d 1074, writ denied 94-2373 (La. 1/13/95), 648 So.2d 1337, illumination of a vehicle's interior with a flashlight did not violate any rights of the defendant under the Fourth Amendment or the State Constitution. In State v. Taylor, 623 So.2d 952 (La. App. 4 Cir.1993), this court found that whatever is discovered by shining flashlight into a vehicle is considered to be in plain view, if there is prior justification for the officer's lawful intrusion, and it is immediately apparent that the discovery is contraband. See also State v. Gervais, 546 So.2d 215 (La.App. 4 Cir.1989).
In the present case the officer stated:
Upon conducting the pat down, I felt what appeared to be the body of a folding knife in his right rear pocket. For my safety I removed it. Upon removing it, I also took the flashlight of the hand-held flashlight I had, and illuminated his right rear pocket, the same pocket I removed the knife from. The light that was cast from my flashlight revealed a glass tube, with a jagged edge. From my experience, I identified this as what appeared to be a crack smoking pipe, and also due to its jagged edge, I removed it for my safety.
And upon removing it, I discovered that it did have the qualities of a crack smoking pipe, and also the residue appeared to be smoked crack cocaine in one end of it.
I then, at that point in time, advised Mr. Ellington of his rights and that he was under arrest for possession of the crack pipe and the residue that was in the pipe.
On cross-examination, Officer Pincus answered the defense counsel's questions as follows:
Q. So, you didn't feel that crack pipe. You had to look into the pocket with the flashlight?
A. I didn't feel the crack pipe. I felt the knife, I removed the knife, and I illuminated the pocket, which revealed the actual jagged edge with the light that was casted (sic) from the light.
Q. So, at the time that you removed the knife, he wasn't under arrest, because you didn't charge him or you didn't intend to
A. I didn'tthat's correct, sir.
Q. You didn't intend to charge him with being in possession of a concealed weapon.
A. No, sir.
Q. And you didn't feel any object in his pocket, other than that knife?
A. Other than, initially, the knife, that's correct.
Q. But, you still went on to further search him, by looking into his pocket with a flashlight?
A. The jagged edge of that pipe was visible to the light.

*179 Q. Right, but you didn't see that until you chose to open his pocket and shine the light in it.
A. I didn't open his pocket. The pocket was already opened after I removed the knife, the pocket was opened. There was an area of space, which was visible. [Emphasis added.]
There was prior justification for the officer's intrusion into the protected area for the investigatory stop and pat down for his protection. Under the totality of circumstances, the intrusiveness of the search did not invade an expectation of privacy that society is prepared to recognize as reasonable when the officer found the knife during a pat down for weapons in the high crime area where the defendant's movements caused the officer to fear for his safety when he sensed that the subject was attempting to conceal something illegal or reach for a weapon.
Officer Pincus did not state that he reopened the defendant's pocket after he retrieved the knife pursuant to the pat down. Rather, he stated that he did not open the pocket again but he could see the glass object tube in the pocket by the illumination of the flashlight. It was immediately apparent, without close inspection, that the officer had probable cause to believe the item was contraband. The glass object was in plain view, and from his experience, the officer identified the glass tube as appearing to be a crack smoking pipe, so that he had probable cause to arrest the defendant for possession of the drug paraphernalia which was believed to contain cocaine residue.
Accordingly, I would reverse the ruling of the trial court and deny the defendant's motion to suppress the evidence.