11 McKAY, Judge.
STATEMENT OF CASE
On March 12, 1997, the defendant, Tyrone Tyler, was charged with possession of cocaine in violation of La. R.S. 40:967. The defendant entered a plea of not guilty at his arraignment on April 23, 1997. After a suppression hearing on November 6, 1997, the trial court denied the defendant’s motion to suppress evidence. The defendant elected a bench trial on February 13, 1998. The trial court found the defendant guilty of attempted possession of cocaine. On April 21, 1998, the trial court denied the defendant’s motions for new trial and post judgment verdict of acquittal. The defendant waived delays, and the trial court sentenced the defendant to serve fifteen months at hard labor. The State filed a multiple bill of information alleging the defendant to be a second felony offender. The defendant admitted to the allegations in the multiple bill. The trial court adjudicated the defendant to be a second offender, vacated the prior sentence and resentenced the defendant to fifteen months at hard labor. The trial court denied the defendant’s motion to reconsider sentence. The trial court granted the defendant’s motion for appeal and set a return date of June 22,1998.

STATEMENT OF FACT

hOn November 11, 1996, Detectives Dwight Rousseve and Clarence Gillard were patrolling areas of the Fifth District in an unmarked police vehicle. They were concentrating on areas from which they had received complaints of narcotics activity. Sgt. Imbraguglio and Det. Lohman were in an unmarked police vehicle in front of them. As the officers traveled on Flood Street, they observed the defendant in an empty lot next to an abandoned vehicle. The officers heard someone yell, “Look out. Heads up,” as they got closer to the defendant. The defendant, who was leaning into the vehicle, immediately stood up, looked towards the police car, and hurriedly walked to the sidewalk. The officers observed the defendant place an object in his left shirt pocket. Sgt. Imbra-guglio advised Det. Rousseve and Det. Gil-lard to stop the defendant. The officers exited their vehicle and detained the defendant. Det. Rousseve testified at trial that upon stopping the defendant, he reached into the defendant’s shirt pocket and removed a piece of clear plastic containing a rock of crack cocaine. The officers arrested the defendant for possession of cocaine.
*179 The defendant, Tyrone Tyler, testified at trial that on November 11, 1996, he had just left Southern Scrap where he had dropped off some appliances for a customer. He had stopped on Flood Street, to see a “shed-tree” mechanic to inquire about a starter. The empty lot where the officers saw him standing was where the mechanic stored the vehicles after working on them. The defendant had just walked to the lot when he heard someone yell “5.0, police.” The defendant looked up, turned around and walked towards his truck. Other individuals who were in the area started running. Officers Imbraguglio and Lohman attempted to apprehend the individuals who were running from the area. However, the officers were not successful in their attempt to apprehend the subjects. The officers | -¡apprehended a juvenile who was leaning against a vehicle in the lot. However, the officers released the juvenile. At the time the officers approached him, the , defendant alleged that he did not know he had cocaine on his person, he stated that he had last worn his uniform on Saturday, and that the cocaine was probably in his pocket since Saturday. The defendant admitted he used cocaine. The rock found in his pocket was very small and had probably fallen off from a larger piece. The defendant opined that the cocaine found in his pocket was worth about three dollars and that if he had known he had cocaine on him, he would have attempted to run or thrown the cocaine away. The defendant acknowledged a prior conviction for armed robbery.
The parties stipulated that the object found in the defendant’s pocket tested positive for cocaine.
ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In his sole assignment of error, the defendant contends the trial court erred when it denied his motion to suppress evidence. The defendant argues that the officers did not have reasonable cause to stop him and that the circumstances did not justify a warrantless search of the defendant.
In State v. Sneed, 95-2326, p. 3 (La.App. 4 Cir. 9/11/96), 680 So.2d 1237, 1238, writ denied, 96-2450 (La.3/7/97), 689 So.2d 1371, this Court described the standard to support an investigatory stop:
An individual may be stopped and questioned by police if the officer has a reasonable suspicion that the person “is committing, has committed, or is about to 14commit an offense.” La.Code Crim. Proc. Ann. art. 215.1. While “reasonable suspicion” is something less than the probable cause needed for an arrest, it must be based upon particular articu-lable facts and circumstances known to the officer at the time the individual is approached. State v. Smith, 94-1502, p. 4 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. The officer’s past experience, training and common sense may be considered in determining if the inferences drawn from the facts presented were reasonable. State v. Jackson, 26,138 (La.App. 2 Cir. 8/17/94), 641 So.2d 1081, 1084.
This Court affirmed a judgment granting a motion to suppress in State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174. In Ellington, the police officer testified he saw the defendant standing in an area known for high drug activity and, upon seeing the marked police car, the defendant put his hands in his pocket as if attempting to conceal something. Thinking that this activity was suspicious and that the defendant was trying to conceal something in his pocket, possibly drugs, the officer stopped the defendant and conducted a patdown search. A folding knife was found in the defendant’s right rear pants pocket. The officer then shined a flashlight into the same pocket and found a glass vial containing cocaine residue. This Court found that these facts were not suf- *180 fícient to justify the stop of the defendant. This Court noted that the officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object that the defendant attempted to conceal. Further, this Court stated that even if the initial stop was justified, the subsequent pat-down frisk of the defendant was not because La.C.Cr.P. art. 215.1 only allowed a frisk of outer clothing for a dangerous weapon. Since the officer did not testify to any particular facts from which he could reasonably infer that the defendant was armed and dangerous, this court held that the patdown frisk was not justified.
In the present case, the officers did not have reasonable cause to stop the | ^defendant. While the officers testified they were patrolling in the area of Flood Street because of complaints of narcotics activity, there was no testimony that the officers had any information that would suggest that the defendant was involved in narcotics activity. The officers did not see the defendant engage in any narcotics activity such as a hand to hand transaction with another person. The officers testified that the defendant was seen leaning into an abandoned vehicle on an empty lot. He was alone. After hearing someone yell “police,” . the defendant left the lot and walked away, putting an object in his pocket. The officers could not tell what the object was or from where the defendant obtained the object. Thinking the object was contraband, the officers stopped the defendant. After detaining the defendant, the officers did not conduct a patdown frisk for their safety. Instead, Detective Rousseve admitted (emphasis added) that immediately after stopping the defendant, he reached into the defendant’s pocket and retrieved the object. There was no reasonable cause to stop the defendant. The officers had no information to suggest that the defendant had committed or was committing a crime. Although the officers stated that they saw the defendant place an object in his pocket, there was no information to suggest that the object was obtained in a narcotics transaction. The officers stated that the defendant was alone and leaning against a vehicle when they first observed him. The defendant was not speaking with other individuals or engaged in a transaction with another person. Even if the officers had reasonable cause to stop the defendant, the officer went beyond the scope of a Terry[1] fi-isk. The officer did not state that he conducted a pat down frisk for his safety or that the object was found during such a frisk and that the officer could tell from the shape of the object that it was contraband. The trial court erred when it denied the defendant’s lfimotion to suppress the cocaine. The evidence should not have, been admitted into evidence at trial.

This assignment has merit.

CONCLUSION

Accordingly, the defendant’s conviction and sentence are reversed, and the case remanded.
REVERSED AND REMANDED.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).