776 So.2d 597 (2000)
STATE of Louisiana
v.
Yrian DEVORE.
No. 2000-KA-0201.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2000.
*599 Harry F. Connick, District Attorney Orleans Parish, Leslie P. Tullier, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
(Court composed of Judge MURRAY, Judge BAGNERIS, and Judge TOBIAS).
BAGNERIS, Judge.

STATEMENT OF CASE
Yrian Devore was charged by bill of information on February 7, 1997, with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. At his arraignment on March 12, 1997, he pled not guilty. The trial court heard the defendant's motion to suppress and denied the motion. The defendant was a found him guilty as charged. The trial court sentenced him, to ten years at hard labor, with credit for time served, and fined him $1,000.00. He was granted an out of time appeal.

STATEMENT OF FACT
On the night of December 16, 1996, Fourth District Police Officers Marcell Foxworth and Louis Martinez were patrolling in a marked unit in the area of the Highland Park Apartments in the 3300 block of Preston Street. Both officers testified at trial and Officer Foxworth testified at an earlier hearing, each one's testimony was substantially consistent with the officer's testimony as well as the police report.
The officers were patrolling in response to complaints lodged by apartment management concerning criminal activity, including narcotics trafficking and prostitution, in and around the apartment complex and its parking lot. The officers drove south on Preston Street, and noticed the defendant and another male in a Buick Regal parked in the apartment parking lot. The officers parked nearby and exited their vehicle to patrol the apartment complex premises on foot. As they approached the parking lot, they noticed that the Buick appeared to be empty. The officers' suspicions were raised by the fact that they had not seen anyone exit the car and there was no one nearby. Only a short amount of time had elapsed since they first noticed the vehicle having two people seated in it. They had the vehicle in their field of vision for all but perhaps a brief moment of time. Officer Foxworth testified that "we didn't lose track of the vehicle, nor did we see anybody get out of the vehicle." The officers approached the Buick from the rear and noticed that the brake lights remained on. Officer Martinez testified as to his reasoning at that moment: "It's not against the law to get in your car and drive off. It's not against the law to sit in the parking lot. But after we went on foot and observed them attempting to conceal themselves from us, that's what aroused our suspicion, and that's when we went to conduct a field interview."
With their suspicions aroused, the officers looked in the car. They saw that the defendant, in the driver's seat, and a second suspect, in the front passenger seat, had fully reclined both front seats. Fearing for his and his partner's safety, Officer Martinez ordered the suspects to show their hands, and exit the vehicle. The passenger complied immediately, and Officer Martinez secured him. The defendant, however, failed to respond immediately and appeared to be nervous. Officer Foxworth testified that he twice asked the defendant to get out the car then proceeded to open the driver's side door himself. At that time, he observed the still reclining defendant bring up his hand from the area of his waist with a cocked gun. He thought the gun was pointed at him, then further observed the defendant, apparently as part of one smooth movement, reaching over his shoulder with the gun attempting to conceal it in the back seat area of the car. During this time, Officer Martinez's *600 attention was directed to the passenger but he testified to hearing Foxworth state "Partner, he has a gun." With the assistance of Officer Martinez, Officer Foxworth disarmed the defendant.
The officers ran the defendant's name in the police computer, and learned that he was on parole for aggravated battery. The defendant was arrested for being a felon in possession of a firearm. The passenger was arrested for trespassing.
Police Officer Glen Burmaster, an expert in identification and classification of fingerprints, testified that he took the defendant's fingerprints on the morning of trial. Through Officer Burmaster's testimony and certified copies of the defendant's criminal records, the State established that the defendant had prior convictions for aggravated battery and possession of marijuana. The State elicited acknowledgment of additional convictions from the defendant himself on cross-examination.
Ms. Latoya Devore testified that she and the defendant are cousins, and the other person arrested with the defendant is her uncle. She lived in the apartment complex on the night her cousin and uncle were arrested. She left her apartment to deliver a telephone message to the defendant but when she got to the parking lot, the police already had them under arrest.
Ms. Juanita Devore, the defendant's mother, testified that the car her son was in the night of his arrest did not belong to him. He was going to purchase the vehicle and asked his uncle to look at it.
The defendant testified that on the night of his arrest he went to his uncle's apartment at 3300 Preston Street. He asked his uncle to check out the Buick Regal because he was considering purchasing it. He testified that immediately prior to the officers' arrival, he and his uncle had been looking under the hood. As he and his uncle sat in the car in the parking lot, the officers approached the car with their guns drawn and ordered them out of the car. He further testified that one of the officers pulled his uncle from the car, and threw him to the ground. He testified that the other officer requested that he exit the car and proceeded to pat him down and then handcuff him. The officers searched the car, and said they found a gun. He denied knowing that the gun was in the car. He denied reclining in the car.

ERRORS PATENT
A review for errors patent on the face of the record reveals a sentencing error. The defendant was convicted of possession of a firearm by a convicted felon. LSA-R.S. 14:95.1 mandates a sentence at hard labor without the benefit of parole, probation or suspension of sentence. In failing to restrict the defendant's sentence with the denial of benefits, the court rendered an illegally lenient sentence. Nevertheless, absent timely complaint by the state or the defendant, this court will not correct an illegally lenient sentence. State v. Fraser, 484 So.2d 122 (La.1986).

ASSIGNMENT OF ERROR:
In a sole assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence. He contends the police officers had no reasonable suspicion to support an investigatory stop. Without a valid stop, the weapon must be suppressed.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 5 (La.7/2/99); 750 So.2d 893, 898 cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's *601 ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572 (La.App. 4 Cir. 9/22/99), 752 So.2d 192.
LSA-C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770.
In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585 (La.App. 4 Cir. 9/22/99), 752 So.2d 911; State v. Mitchell, 97-2774 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78.
In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if the officer's inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160.
In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99); 729 So.2d 132, 137.
In State v. Stan, 97-2195 (La.App. 4 Cir. 10/29/97), 703 So.2d 83, writ denied, 97-2852 (La.2/18/98), 709 So.2d 762, four officers in two police cars were patrolling the area of Clouet and Burgundy Streets as a result of complaints of illegal narcotic activity in the area. At the intersection, they observed a red pick-up truck parked in a river-bound direction. The officers recognized the driver of the truck and a second man standing near the truck from previous narcotics arrests. Believing that a narcotics transaction was occurring, the officers decided to investigate. They positioned the police cars so that the truck could not move and asked the occupants to exit the truck. As the driver complied, he was observed placing a small silver tin foil packet on the seat of the truck, which the officers immediately recognized as typical packaging for heroin.
On appeal, this Court found no basis for the investigatory stop based solely upon the reputation of the area even though the *602 officers were familiar with the driver and the man standing nearby. Moreover, the Court noted that the defendant never attempted to flee the area or otherwise make any furtive, suspicious, or startling movements upon the approach of the police.
In State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174, the defendant was standing in an area known for drug trafficking and prostitution. Upon seeing a marked police car, he "briskly placed something in his pants pocket". At the motion to suppress the evidence the officer testified that he thought the defendant's activity "was suspicious and that it might be an attempt to conceal something in his pocket." The officer further testified that this behavior might "indicate certain crimes such as drug activity, drug concealment..."; additionally the officer testified that this incident occurred in an area known for drug trafficking and prostitution. Based upon the defendant's movements, the police officer stopped and frisked the defendant, finding a four-inch long folding knife and cocaine. The defendant filed a motion to suppress this evidence, which the trial court granted. This Court later affirmed, finding that the officer lacked reasonable suspicion to conduct the investigatory stop.
... [the officer] testified that he saw the defendant standing in an area known for high drug activity and, upon seeing the marked police car, put his hands in his pocket as if attempting to conceal something. These facts are not sufficient to justify the stop of the defendant. The officer did not testify that he saw the defendant engaging in what appeared to be a drug transaction, or that he saw a suspicious object that the defendant attempted to conceal. `A hunch or suspicion of illegal activity or transaction is insufficient to establish reasonable grounds to stop a person.'
680 So.2d at 175-176.
Similarly, in the recent case of State v. Ratliff, 98-0094 (La.App. 4 Cir.5/19/99), 737 So.2d 252, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160, the defendant was observed standing with two or three other subjects in front of a residence late in the evening. Officers on pro-active patrol made an investigatory stop, having received general complaints in the neighborhood. The officers observed defendant with his arms folded and holding something in his hand, but they saw no exchange and, in fact, admitted that none of the subjects appeared to be doing anything wrong. This Court considered the reasonableness of the stop as follows:
We recognize that the reputation of an area is an articulable fact upon which an officer may rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.), writ denied, 578 So.2d 131 (1991). We also note that deference should be given to the experience of the officers who were present at the time of the incident. State v. Taylor, 96-1843, p. 4 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 770, writ denied, 98-2233 (La.1/8/99), 1999 WL 39785, 734 So.2d 1224.
However, considering the totality of the circumstances, we must conclude that the officers lacked reasonable suspicion to stop Mr. Ratliff. Arguably, the fact that Mr. Ratliff kept his hand clenched the entire time the officers questioned him and his group and while he walked to the police car reasonably could have aroused the officers' suspicion. However, Mr. Ratliff and his friends were subjected to an investigatory stop before this happened. Officer Burns testified that he decided to conduct an investigatory stop simply because Mr. Ratliff was standing, with his arms folded and his fist closed, on the sidewalk in front of a house at 11:00 in the evening in an area known for drug trafficking. Officer Burns could point to no other factors in support of the stop. He observed no transactions between the members of the group or passing vehicles; none of the group attempted to *603 flee when the officers' approached; no one was doing anything wrong.
Although this Court is cognizant of the drug related criminal problem in this state and City, we cannot agree that the officers' stop of Mr. Ratliff was based on reasonable suspicion. For this reason, the conviction is reversed.
Id. at pp. 3-4, 737 So.2d at 254-255 (emphasis added).
The foregoing notwithstanding, there are cases in which this Court has found reasonable suspicion for an investigatory stop on the basis of the reputation of the area in which the stop took place coupled with some "suspicious" action by the defendant.
The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4th Cir.), writ denied, 578 So.2d 131 (La.1991). Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Noto, 596 So.2d 416 (La.App. 4th Cir.1992); State v. Preston, 569 So.2d 50 (La.App. 4th Cir.1990).
In State v. Ganier, 591 So.2d 1328 (La. App. 4th Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned "suspiciously", began to walk away slowly, and then began to run. The officers chased the defendant until he was apprehended.
This Court found that two factors were sufficient to justify a stop of the defendant: the area's reputation for drug trafficking, and the suspicious actions of the defendant. This court noted:
... Drug activity and crimes that it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not a case of a man merely standing on a street corner who is detained by the police simply because he is there.
591 So.2d at 1330.
In State v. Benjamin, 96-2781 (La.App. 4 Cir. 11/26/97), 703 So.2d 192, officers were on routine patrol when they encountered the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running. Believing the defendant was carrying a weapon or contraband, the officers chased and eventually captured the defendant and retrieved a gun, which he had abandoned during the chase. The trial court denied the defendant's motion to suppress the gun and a statement he made at his arrest, and this Court reversed.
This Court first noted that the actions of the officers constituted an imminent stop, for which they needed reasonable suspicion; and this Court further found reasonable suspicion was lacking. This Court noted that the officers who chased the defendant did so only because he began running and had grabbed at his waistband. This Court pointed out that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant's part. Having found there was an imminent stop and that the officers did not have reasonable suspicion to support the stop, this Court suppressed the evidence abandoned by the defendant. However, the Supreme Court reversed. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. The Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers, and it stated:

*604 This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers a reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Benjamin, 97-3065, p. 3, 722 So.2d at 989.
In light of the foregoing cases and the record of this case, it appears that the State produced sufficient evidence to support the conclusion that the officers acted on more than pure suspicion when they stopped the defendant. In this case, the officers testified that they were patrolling the apartment complex and premises in response to complaints of drug sales, prostitution and other street crime. They observed the defendant and another individual in a vehicle parked in the apartment's parking lot. There was no testimony that the officers witnessed the defendant engaged in any illegal activity, or make any furtive movements or attempt to flee. In fact, the only reason the officers approached the car was to satisfy their curiosity concerning the lights being on in what appeared to be an empty vehicle. Officer Martinez testified at trial that:
We didn't find it strange for them to be sitting in a car with the lights on ... But after we went on foot and observed them attempting to conceal themselves from us, that's what aroused our suspicion, and that's when we went to conduct a field interview.

CONCLUSION
Under the totality of circumstances, we find that the defendant's behavior "highly suspicious"upon seeing the police coupled with the fact of the area's high incidence of drug crime and prostitution, sufficient for a finding of "reasonable suspicion"under the "greatly lessened" rule of Benjamin. Therefore, the defendant's conviction and sentence are affirmed.
AFFIRMED.