h MURRAY, Judge.
On February 5, 1998, the defendant, Derrick Conaler, was charged with being in possession of a firearm while also possessing narcotics, a violation of La.R.S. 14:95(E). He pled not guilty. Following a hearing on May 29, 1998, the trial court denied defendant’s motion to suppress the evidence. Defendant sought supervisory review in this court, which was denied. On October 8, 1998, defendant entered a plea of guilty as charged under State v. Crosby, 338 So.2d 584 (1976). The trial court sentenced defendant to five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.
Defendant now appeals on the sole ground that the trial court erred in denying his motion to suppress. For the reasons that follow, we affirm.

FACTS:

At the motion to suppress hearing, the sole witness, Detective Barry Marquez, testified that he and his partner, John Thomas, were patrolling the area of Majestic Oaks, Drew Avenue and Francis *166 Drive in a marked police car on the evening of October 16, 1997, around 8:30 p.m. As the officers turned off of Majestic Oaks onto Drew Avenue, they observed the defendant come around the | ¡.corner riding a bike. The police vehicle was traveling east on Drew Avenue; the defendant turned from Francis Drive onto Drew Avenue and was traveling west. As the defendant approached, he observed the marked police car and “nervously and hurriedly turned on a dime.” Having reversed his direction, the defendant began to “speed away” from the police officers. This behavior aroused the suspicion of the officers, who then attempted to follow the defendant. As he rode ahead on his bike, the defendant began to look over this right shoulder “in a very nervous and suspicious manner” as if to pinpoint the lo'cation of the marked police unit. Simultaneously, the defendant “reached to his right side, maybe attempting to get into his right pants pocket.” The defendant then turned onto Francis Drive headed toward Chef Highway, and within about forty feet of making that turn, he completely stopped his bicycle.
Detective Marquez and his partner immediately exited the police car. Detective Marquez advised the defendant that he was under investigation for possibly being in possession of contraband and/or a concealed weapon. Detective Marquez then conducted a pat down search and felt the outline of a pistol in the defendant’s right pants pocket, the same area that the officers had observed the defendant grabbing for repeatedly. Upon finding a semi-automatic pistol, the officer advised the defendant he was under arrest for possession of a concealed weapon. After the defendant was handcuffed, a search incident to arrest led to the seizure of four clear plastic bags containing cocaine. The officer advised the defendant of his Miranda rights and further advised him that he was also being charged with possession of cocaine.
Detective Marquez admitted that prior to arresting the defendant, no report of any commission of a recent crime in that vicinity had been received. However, |3he stated that the area has been designated as a high narcotics trafficking area. He also stated that at the time that he observed the defendant reaching towards his pocket, he did not see the outline of anything, but that due to the defendant’s gestures and mannerisms, he had a reasonable suspicion that the defendant could have been carrying a weapon.

ERRORS PATENT

A review of the record reveals an error patent in sentencing. The defendant was convicted of violating La.R.S. 14:95(E), which provides: “the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.” In the case at bar, the defendant was not fined, and, thus, the sentence is illegally lenient. However, a lenient sentence is not disturbed on appeal when the State does not raise the issue, State v. McGee, 95-1863 (La.App. 4 Cir. 10/18/95), 663 So.2d 495.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues that the trial court erred in denying his motion to suppress.
The issue, therefore, is whether the defendant’s presence in a high crime area, coupled with his initial flight on a bicycle and his allegedly suspicious actions while being pursued by the officers, is enough to justify an investigatory stop and subsequent search.
The defendant relies primarily on State v. Ellington, 96-0766 (La.App. 4 Cir. *167 9/4/96), 680 So.2d 174, to support his argument that the officers lacked [ reasonable suspicion to stop and frisk him. In Ellington, a police officer on patrol in a high crime area saw the defendant place something in his pocket in a suspicious manner. The officer stopped the defendant and frisked him, resulting in the seizure of a knife. This court found that the officer did not have a reasonable basis for the stop and frisk. Ellington, supra, pp. 2-3, 680 So.2d at 175.
However, Ellington is distinguishable from the instant case in that there was no allegation in Ellington that the defendant fled from the police officers. In the instant case, Detective Marquez clearly testified that the defendant fled; upon seeing the police car, the defendant hurriedly turned his bicycle “on a dime” and began speeding away in the opposite direction from that in which he had been traveling. Moreover, the fact that defendant eventually turned a corner and stopped his bicycle does not negate his initial flight, which aroused the suspicion of the officers. The observation of flight by the officers is no less valid because the defendant may have at some point determined that flight was futile, or for some other reason, decided to stop. The clear inference from the testimony is that the defendant’s flight at the sight of the police car was the primary suspicious behavior that prompted the officers to begin following him.
The leading case involving allegations of flight from police officers, which has facts very close to those in the instant case, is State v. Benjamin, 96-2781 (La. 4 Cir. 11/26/97), 703 So.2d 192, reversed, 97-K-3065 (La.12/1/98), 722 So.2d 988. In Benjamin, officers were on routine patrol when they encountered the defendant, who was walking down the street. As the officers pulled alongside the defendant, he grabbed at his waistband and began running. _J^Believing the defendant was carrying a weapon or contraband, the officers chased and eventually captured the defendant and retrieved a gun, which he had abandoned during the chase. The trial court denied the defendant’s motion to suppress the gun and a statement he made at his arrest, and the appellate court reversed.
This court first noted that the actions of the officers constituted an imminent stop, for which they needed reasonable suspicion, and further, found that reasonable suspicion was lacking. This court noted that the officers who chased the defendant did so only because he began running and grabbed at his waistband, but that the officers had no tip involving the defendant or any drug activity at that time, nor did they see any weapon or suspected drug activity on the defendant’s part. The officers did not even testify that the area being patrolled was notorious for criminal activity. Therefore, having concluded that the officers did not have reasonable suspicion to support the imminent stop, this court suppressed the evidence abandoned by the defendant. Id., 703 So.2d at 195—197.
However, the Supreme Court reversed. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988. The Supreme Court found there was reasonable suspicion for stopping the defendant because he had fled at the sight of the officers, and it stated:
This Court has previously ruled that flight from police officers, alone, will not provide justification for a stop. State v. Belton, 441 So.2d 1195 (La.1983). This activity, however, is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. Belton, 441 So.2d at 1198. Given the highly suspicious nature of flight from a police officer, the amount of additional *168 information required in order to provide officers a | ^reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened.
Here, Officers Rome and Pollard observed that Defendant, upon seeing the marked police unit, began to run away holding his waistband as if he were supporting a weapon or contraband. These objective facts known to the officers were sufficient to raise a reasonable suspicion that Defendant either was engaging or was about to engage in criminal activity, and, thus, justified a stop.
The Court of Appeal ruled that because “it is not a crime to run from the police while clutching one’s waistband,” the stop was illegal. The Court of Appeal erred. Police to (sic) do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officer have a reasonable suspicion of criminal activity.
Because we find that the officers had a reasonable suspicion of criminal activity on the part of Defendant, thus justifying an investigatory stop, the question of whether an “imminent stop” had occurred when Defendant abandoned the firearm, as held by the Court of Appeal, is moot.
Benjamin, supra, pp. 3-4, 722 So.2d at 989-990.
In the instant case, Officer Marquez testified that the defendant turned on a dime and sped away on his bike. The officer equated this action to fleeing. As the officers pursued the defendant, the officers noted what they considered other suspicious activity, i.e., the defendant kept looking over his shoulder in a nervous manner while simultaneously reaching to his right side. Officer Marquez speculated that the defendant was attempting to reach into his right pants pocket. Officer Marquez testified that the defendant’s repeated movements toward his right pocket aroused his suspicion because “it is indicative in police work and officer safety that a person always indicate (sic) whether to conceal or discard any kind of weapon or contraband.” Accordingly, when the defendant finally pulled over and stopped his bicycle, Officer Marquez and his partner called the defendant over to the police car and conducted a pat down search.
|7The trial court heard the officer’s testimony and concluded that the police had a reasonable suspicion that the defendant was fleeing from them because he was possibly engaged in criminal activity. The trial court is vested with great discretion when ruling on a motion to suppress. State v. Scull, 93-2360, p. 9 (La.App. 4 Cir. 6/30/94), 639 So.2d 1239, 1245. Applying the reasoning of the Supreme Court in State v. Benjamin, supra, to the facts of the instant case, we cannot say that the trial court abused its discretion in denying the motion to suppress. The defendant herein displayed essentially the same behavior as in Benjamin, i.e., flight at the sight of police officers accompanied by grabbing at his pants pocket (as opposed to his waistband in Benjamin); moreover, there was testimony in the instant case that the defendant was located in a high crime area, which fact was not present in Benjamin.
Accordingly, because the defendant has failed to show the trial court erred in denying his motion to suppress, we affirm his conviction and sentence.
AFFIRMED