NOT DESIGNATED FOR PUBLICATION

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **NO. 2020-K-0174** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **BRIAN ELLIS** | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 548-135, SECTION "SECTION K"
Honorable Hunter P. Harris, Judge, Pro Tempore
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Roland L. Belsome, Judge Daniel L. Dysart)

**BELSOME, J., DISSENTS**

**LEON A. CANNIZZARO, JR.**
**DISTRICT ATTORNEY ORLEANS PARISH**
**DONNA ANDRIEU**
**CHIEF OF APPEALS**
**SCOTT G. VINCENT**
**ASSISTANT DISTRICT ATTORNEY**
619 S. White Street
New Orleans, Louisiana 70119
    **COUNSEL FOR STATE/RELATOR**

**JAMES HUFFEGAN**
**ORLEANS PUBLIC DEFENDERS**
2601 Tulane Avenue, Seventh Floor
New Orleans, Louisiana 70119
    **COUNSEL FOR DEFENDANT/RESPONDENT**

**WRIT GRANTED**

**APRIL 22, 2020**

The State seeks review of the March 2, 2020, granting of the defendant's motion to suppress the evidence and finding of no probable cause. Finding merit to the State's writ application, we reverse the district court's rulings.

**STATEMENT OF THE FACTS**

Officer David Santanello testified that on November 26, 2019, he and other members of the Seventh District Task Force were patrolling the area of Chef Menteur Highway when they observed the defendant. He stated:

> We observed the subject, Mr. Brian Ellis, walking from Six Thousand Chef towards the gas station. He was, multiple times reaching for his waist, and holding his hands in a way that would indicate to me that there was something of weight hidden within his waistband.

The officer explained that that by "some weight" he meant:

> Often time when there's a potential firearm hidden, or concealed waistband, when someone is walking with it, you will adjust yourself as the firearm will manipulate as you walk, and often times when there is a firearm concealed within a waistband, somebody is holding the waistband, or constantly reaching towards that area.

Officer Santanello acknowledged that he did not see a bulge of any kind in the defendant's pants. He stated that he observed the defendant manipulate his belt more than three times.

1

The defendant was then stopped and handcuffed. Officer Santanello then patted the defendant down and discovered a firearm in his waistband. The defendant was Mirandized and he stated that he bought the gun on Canal Street.[1] Officer Santanello searched the defendant and discovered a plastic bag containing pills of ecstasy.

During cross examination, the defendant sought to establish that Officer Santanello did not personally observe all of his actions and that other officers were observing the defendant and radioing Officer Santanello with reports of the defendant's actions.[2] To that end, the defendant introduced footage from Officer Santanello's body worn camera. Specifically, defense counsel highlighted Officer Santanello's statement, which follows, to the defendant at the time he was apprehended:

> We have officers in the area, they observed you grabbing your waistband as though you were trying to keep something up, which is indicative to us of someone possibly having something concealed of weight. And what do you think that normally is?

**PROCEDURAL HISTORY**

The defendant is charged with possession of a firearm by a convicted felon and illegal carrying of a weapon while in possession of a controlled dangerous substance, violations of La. R.S. 14:95.1 and 95(E), respectively, a firearm. A hearing on defense motions was held on February 10, 2020. The district court recessed the hearing and on March 2, 2020, granted the defendant's motion to

---

[1] See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966).
[2] Under the fellow officer doctrine, even if the other task force officers had not relayed their observations, their observations would nevertheless be imputed to Officer Santanello. State v. Elliott, 2009-1727, p.1 (La. 3/16/10), 35 So.3d 247, 249 ("The determination of whether … reasonable suspicion for an investigatory stop [exists] is a purely objective inquiry that takes into account all of the information known collectively by the law enforcement personnel involved in the investigation even if some of the information is not communicated to the arresting officer.")

suppress evidence and found no probable cause. The district court's ruling was as follows:

> This Court finds that the motion to suppress evidence should be granted according to the United States Supreme Court in Terry versus Ohio: " An investigatory stop cannot be based on a hunch or even an officer's good faith and the reasonable suspicion required must be subjectively and objectively reasonable and based on specific articulable facts." Additionally, according to the Louisiana Supreme Court in State versus Brown, which is 395 [So.2d] 1301 [(La. 1981)] mere suspicion cannot justify an arrest. The purported action of an individual grabbing at their waistband with no further evidence of any reasonable suspicion of additional criminal behavior is simply insufficient. The Louisiana jurisprudence is clear on this point. The evidence presented before this Court is insufficient to prove that the officer has probable cause for the arrest, much less reasonable suspicion for a Terry stop of the defendant.
>
> In his testimony at the motion hearing held on February 10, 2020, Officer Santanello testified that it was the adjustment of the defendant's pants that caught his eye, in the moving of the defendant's pants from side to side.
>
> Furthermore, the officer denied seeing a bulge or L-shaped bulge in the defendant's pants. Officer Santanello answered in the affirmative when asked on cross examination that the only reason he stopped the defendant was because of the adjustment of his waistband. There's no indication that the defendant was engaging in any other criminal behavior. The Court will, therefore, grant defense's motion to suppress evidence. The Court does not find reasonable suspicion for the stop. The Court does not find probable cause for the stop.

**DISCUSSION**

The matter is before this Court for a determination of whether the district court erred in granting the defendant's motion to suppress evidence. In State v. Gates, 2013-1422 (La. 5/7/14), 145 So.3d 288, the Court set forth the standard of review as follows:

> When the legality of a search or seizure is placed at issue by a motion to suppress, the state must bear the burden of proving the admissibility of the evidence seized by the police acting without a warrant. State v. Thompson, 2011-0915, p.13 (La.5/8/12); 93 So.3d 553, 563; State v. Martin, 2011-0082, p.6 (La.10/25/11); 79 So.3d 951, 955; La. C.Cr.P. art. 703(D). A trial court's decision relative to the suppression of

3

> evidence is afforded great weight and will not be set aside unless there has been an abuse of that discretion. Thompson, 2011-0915, p.13; 93 So.3d at 563; Martin, 2011-0082, p.6; 79 So.3d at 955; State v. Wells, 2008-2262, p.5 (La.7/6/10); 45 So.3d 577, 581.

Id., p.9, 145 So.3d at 294.

Article 1, Section 5 of the Louisiana Constitution of 1974 and the Fourth Amendment to the United States Constitution protect individuals from unreasonable searches and seizures.

A search conducted without a warrant is per se unreasonable under the Fourth Amendment to the United States Constitution, subject only to a "few specifically established and well-delineated exceptions ." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967). One such exception was recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), which allows an officer to perform an investigative stop where there is reasonable suspicion to believe that the individual has committed or is about to commit a crime.

Louisiana Code of Criminal Procedure article 215.1, which codifies the Terry standard, recognizes a law enforcement officer's right "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense." Once a valid stop is made "and [the stopping officer] reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon". La. C.Cr.P. art. 215.1(B).

Reasonable suspicion is less than the probable cause needed to arrest a defendant; an officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 695 (1981); State v. Temple, p.4, 2002-1895 (La. 9/9/03), 854 So.2d 856, 859-860. In discussing the standard to be used by a

4

reviewing court to determine if an officer had reasonable suspicion to detain a suspect, the Court in State v. Fearheiley, 2008-0307, p.1 (La. 4/18/08), 979 So.2d 487, 488 stated:

> While the police may not detain individuals on the basis of an " 'inchoate and unparticularized suspicion or "hunch," ' " United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)(quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)), in determining whether reasonable suspicion exists to conduct an investigatory stop, i.e., whether the police possessed the requisite "minimal level of objective justification," INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984), courts must take into account the totality of the circumstances in a process that allows the police " 'to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." ' " State v. Johnson, 01-2081, p.3, 815 So.2d 809, 811 (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002))(internal quotation marks and citations omitted).

The State submits that there was reasonable suspicion for an investigatory stop and that the district erred when it granted the motion to suppress evidence and found no probable cause. Specifically, the State submits that the initial detention and pat down were reasonable under the circumstances. The State suggests that the defendant's suspicious conduct observed by Officer Santanello – "reaching to the front of his waistband several times and adjusting his pants by reaching with his hand and grabbing what appeared to be more than just the front of his waistband" – caused the officer to reasonably suspect that defendant was concealing a weapon in his pants.[3]

---

[3] It is reasonably clear that Officer Santanello's decision to place the defendant in handcuffs was an objectively reasonable decision not to subject himself to an undue risk of harm given his observations and did not convert the Terry stop into an arrest requiring probable cause. State v. Porche, 2006-0312, p 4 (La. 11/29/06), 943 So.2d 335, 339 ("Inherent in the right of the police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention.")

5

In turn, the defendant submits that while an officer's observation of a person adjusting his or her waistband may be a factor in determining whether there is reasonable suspicion, that observation alone is not enough. He notes that there are no other articulable facts that could create reasonable suspicion for the stop in this instance. The defendant notes that he was not observed associating with suspected drug dealers, did not try to flee from or avoid officers, and did not appear nervous or make furtive movements upon seeing officers.

The issue presented here, whether furtive movements – grabbing at the waist – consistent with someone attempting to conceal a firearm in his waistband, alone, form a sufficient basis for a Terry stop is something of an open question, as this Court tacitly recognized in State ex rel. D.F., 122 So.3d 1193 (La App. 4 Cir. 2013). Interestingly, both parties have cited State ex rel. D.F., favorably.

In State in Interest of D.F., police officers were at the Bacchus Mardi Gras parade when they observed D.F. and two others walking towards them. It appeared that D.F. walked around a car to avoid the officers. One of the officers observed D.F. with his hand on the right side of his waistband and quickly moved his hand away from his waistband when he noticed that the officer was watching him. Based on his experience with prior firearm arrests, the officers believed that D.F.'s furtive gesture was consistent with someone attempting to conceal a firearm in his waistband.[4]

---

[4] The officer noted that perpetrators tend to grab their waistbands and that "'normal movement tends to dislodge or keep the firearm moving in their waistband[s], so they constantly have to readjust [them] in their waistband[s] to keep [them] from falling....'" Id., p.2, 122 So.2d at 1195.

Initially, this Court recognized "that D.F.'s grabbing at his waistband alone may not be sufficient to justify the stop." However, because the arresting officer also observed the defendant make several furtive movements[5], this Court concluded that "when viewed together, all of D.F.'s actions demonstrate sufficient articulable facts from which [the officer] could form reasonable suspicion to conduct an investigative stop." Id. p.5, 122 So. 3d at 1197.

The defendant cites State v. Dappemont, 98-0446 (La. App. 4 Cir. 3/17/99), 734 So.2d 736, in support of his argument that grabbing his waistband alone was insufficient. However, Dappemont is not instructive as it concerned the seizure of marijuana in a paper bag under the "plain feel" exception to the warrant requirement.

Defendant also cites State v. Ellington, 96-0766 (La. App. 4 Cir. 9/4/96), 680 So.2d 174, in support of the court's ruling; however, Ellington is not especially instructive. In Ellington, the reporting officer was on patrol in an area known for high drug activity. When the defendant saw the officer he briskly placed something in his right pants pocket. The officer explained that he thought this activity was suspicious and that it might be an attempt by the defendant to conceal something in his pocket. The officer stopped the defendant and conducted a patdown search which revealed a folding knife in his right rear pocket. This Court found that the officer did not testify to any "particular facts" from which he

---

[5] "D.F. quickly moved his hand away from his waistband when he noticed that Officer Pichon was watching him. D.F. also avoided walking in front of Officer Pichon by splitting from the group of people he was with in order to walk on the opposite side of the police car. D.F. further began whispering to the other individuals when he noticed that he was being watched." Id. p.5, 122 So.3d at 1197.

7

could reasonably infer that the defendant was armed and dangerous and that the pat-down frisk was not justified.

Regardless of the fact that the defendant's actions "had other possible innocent explanations," Officer Santanello was not required "to turn a blind eye to the circumstances" and ignore what were patently suspicious actions.[6] State v. Fearheiley, 08-0307, p.2 (La. 4/18/08), 979 So.2d 487, 489. See also State v. Greenberry, p.1 2014-1126 (La. 4/10/15), 164 So.3d 824, 825 ("A reviewing court should give deference to the inferences and deductions of a trained police officer 'that might well elude an untrained person.'" (citation omitted)).

Rather, as the Court explained in Fearheiley, Officer Santanello was entitled to draw on what his experience as an officer has taught him in reaching the conclusion that the defendant appeared to be clutching a weapon in his waistband. ("He was, multiple times reaching for his waist, and holding his hands in a way that would indicate to me that there was something of weight hidden within his waistband…. when there's a potential firearm hidden … when someone is walking with it … the firearm will manipulate as you walk … when there is a firearm concealed within a waistband, somebody is holding the waistband, or constantly reaching towards that area.") The district court's conclusion that the stop was predicated on no more than a hunch does not appear to be supported by the record and fails to accord Officer Santanello's inferences and deductions the deference that is deserved. Contrary to the court's conclusion, Officer Santanello's decision to perform an investigatory stop was based on objectively reasonable conclusions

---

[6] Recently, in State v. Jackson, 2020-87 (La. App. 4 Cir. 3/30/20), unpub., this Court granted the State's writ under similar circumstances and reversed the Appellate Division. (Defendant seen walking on Bourbon adjusting his pants which were being pulled down by a firearm.) See also State v. Robertson, 2018-91 (La. App. 4 Cir. 3/21/18), unpub., which raised essentially the identical issue, and this court denied the defendant's writ. ("you c[an] tell when someone's holding, trying to hold up a weapon in their pants").

based on specific articulable facts. Accordingly, Officer Santanello had reasonable suspicion to conduct an investigatory stop.

Based on the above, we find that the district court erred in granting the defendant's motion to suppress and in finding no probable cause.

**WRIT GRANTED**